### BROWN & SHARPE MFG. CO. v. L. S. STARRETT CO.

#### (District Court, D. Massachusetts. November 13, 1912.)

#### No. 77.

PATENTS ☞328—VALIDITY AND INFRINGEMENTS—MICROMETER CALIPERS.

The Spalding patent, No. 717,296, for micrometer calipers, having especial reference to an improved device for clamping the spindle, discloses invention, even though the general form of clutch or locking means used was known and used in other arts, taking into consideration the fact that in adapting it to calipers it was essential to provide against the least disturbance of the position of the spindle, and the claims while narrow and specific are entitled to a reasonable range of equivalents. Also, *held* infringed.

In Equity. Suit by the Brown & Sharpe Manufacturing Company against the L. S. Starrett Company. On final hearing. Decree for complainant.

Wilmarth H. Thurston, of Providence, R. I., for plaintiff.
Robert W. Hardie, of New York City, for defendant.

BROWN, District Judge. The bill charges infringement of letters patent No. 717,296, December 30, 1902, to F. Spalding, assignor to Brown & Sharpe Manufacturing Company, for micrometer calipers. The specification states:

"This invention has reference to an improved device for clamping the spindle of a micrometer caliper or gauge.

"Micrometer calipers or gauges consist usually of a frame having an anvil at one end and a spindle partly screw-threaded and in screw-thread engagement with the opposite end. These calipers or gauges are used in the arts for the accurate measurement of parts and are usually constructed to determine microscopic differences within one $1/1000$ of an inch. When the accurate measurement has been taken by a micrometer caliper or gauge, it is desirable to lock the spindle, so as to retain the exact position of the same. To lock the spindle and maintain the same in the position when the measurement is taken, it is important that the spindle should not be rotated or moved longitudinally in the slightest degree, so that the measurement taken will not be altered.

"The invention consists in the peculiar and novel construction of a split-spring clamping-ring, and means for actuating the same, as will be more fully set forth hereinafter."

The means for locking the spindle consist of a split clamping-ring arranged to surround the spindle, the clamping-ring having an inclined

---

or tangential surface; an actuating-ring surrounding the clamping-ring; a roller interposed between the split-ring and the actuating-ring and located in the space formed by the inclined or tangential surface; and a projection upon the split-ring which engages a slot in a portion of the frame which forms the bearing of the spindle. The projection and slot prevent the split-ring from turning with the actuating-ring.

These parts are placed in a transverse slot formed in the micrometer frame or spindle bearing.

The specification states:

"The split-ring $b$ may now be placed into the actuating-ring $c$, the member $b^5$ in the wedge-shaped cavity between the split-ring and the actuating-ring, as is shown in Fig. 3, and the assembled parts may be slid into the slot $a^7$, with the projection $b^1$ in the seat $c^2$. The spindle is now placed in position, extending through the split-ring, which ring is held against rotation."

The spindle may be locked by rotating the actuating-ring, thereby moving the roller toward the split-ring, to contract the ring and clamp it on the spindle. It may be released by the reverse movement of the actuating-ring.

The complainant contends that the advantage of this construction is the effective locking of the spindle without any disturbance of its adjusted position, and the further advantage of ease of assembling the parts and of removing the same, if desired.

The claims in suit are:

"1. The combination with the spindle of a micrometer caliper, the bearing of the spindle, a transverse slot in the bearing and a cavity in the wall of the bearing, of a split-ring, a projection on the split-ring, a tangential plane on the split-ring, an actuating-ring inclosing the split-ring, and a member operated by the actuating-ring and operating the split-ring, as described.

"2. In a micrometer caliper, the combination with the frame of the caliper, the anvil, the spindle, the bearing for the spindle, and the micrometer mechanism, of the slot $a^7$, the seat $c^2$ in the wall of one side of the slot, the split-ring $b$, the projection $b^1$ on one face of the split-ring, the plane $b^2$ and shoulder $b^4$, on the split-ring, the member $b^5$, and the actuating-ring $c^1$, as described."

The defendant contends that the device shown in the patent is lacking in patentable novelty, and shows that the prior art contains a number of patents showing micrometer calipers or gauges with means for locking the adjusting screw or spindle in position. The patents cited are: Starrett, No. 433,311; Spalding, Nos. 557,445 and 645,838; Bellows, Nos. 456,875 and 612,601; Wells, No. 641,173.

A transverse slot in the frame of a miscrometer caliper to receive an actuating-ring, for controlling a locking mechanism, is shown in patents to Bellows, No. 612,601, and to Wells, No. 641,173. There is also evidence that this feature of construction was shown in calipers made by Starrett in 1898. In none of these patents, however, nor in the Starrett micrometer caliper in evidence, is found the clamping or locking means of the patent in suit. The defendant contends, however, that brakes and clutches, with a split-ring with tangential surfaces with rollers or balls, were in use, and that these clutches are similar in construction and principle to that of the patent in suit.

Special reliance is placed upon the patent No. 613,619, November 1, 1898, to F. L. Clapp, for back-pedaling brake.

The principal proposition of the defendant is that, micrometer gauges having been used with some form of clutch for locking an adjusting screw in position, there was no invention in substituting one old form of clutch in such connection in place of a clutch heretofore used on micrometer gauges. It is argued that the idea of applying a clutch to a multiplicity of objects is inherent in the very nature of a clutch. This argument assumes that only the ordinary considerations applicable to clutches or brakes in general are applicable to the problem of the patent in suit. The patents of the prior art show a number of attempts at a solution of the problem of providing an efficient and convenient locking device for a micrometer caliper. In the general art of clutches or brakes there existed the problem of firmly engaging a shaft, but it does not appear from the defendant's showing in respect to the general art of clutches that there was involved the problem of locking a spindle securely without the possibility of minute disturbances of the adjustment of the spindle. In micrometer calipers used for accurate measurement of parts and constructed to determine microscopic differences within $^1/_{1000}$ of an inch, the problem would seem to be of a different nature from that ordinarily involved in applying a clutch. If therefore it could be fairly said that in general principle, and considered merely as clutches, the device of the patent in suit and that of Clapp were similar, there would still remain the question whether there was room for invention in adapting a clutch operating upon this principle to the specific purpose of use in a delicate measuring instrument and to the improvement of micrometer calipers either in respect to the feature of locking the spindle without disturbance, or in respect to convenience of manufacture.

The patents of the prior art relating to micrometer calipers indicate clearly the need for locking means which shall prevent disturbance of the spindle. None of them shows the use in this specific branch of art of the split-ring with its tangential surface, roller, and actuating-ring. There is nothing in the Clapp patent to suggest that in this somewhat complicated structure is a form of clutch which is better adapted than other clutches for the secure locking of a micrometer spindle and for convenient assemblage with an actuating-ring and a micrometer frame.

The argument of the defendant on the question of invention seems erroneous in ignoring the specific requirements of the art of manufacturing precise instruments like that with which the patent is concerned.

The defendant also raises a defense based upon the file wrapper. This defense is in effect that the claims in suit are to have a very limited construction by reason of the rejection of other claims. I have carefully considered the contention of the defendant upon this point, but am of the opinion that the complainant is not in this case reasserting claims rejected by the Patent Office, but stands upon narrower and more specific claims.

The defendant's infringing devices are shown in patent to Starrett, No. 806,594, December 5, 1905; also, in patent to Starrett, No. 873,626, December 10, 1907; and in patent to Starrett, No. 928,889, July 20, 1909.

The Starrett patent, No. 806,594, shows an actuating-ring in a transverse slot, inclosing a clamping-ring, or, as it is called in Starrett's specification, "an annular spring tongue." This is formed from a cylindrical bushing by sawing two deep parallel transverse slots which nearly sever the bushing. The portion of the bushing between the slots substantially resembles the complainant's split-ring, being so constructed as to afford a recess for a roller and to yield to pressure when, by a movement of the actuating-ring, the roller is pressed·upon it, thus clamping the spindle. This "ring-shaped tongue" is held against rotation by frictional engagement of the ends of the bushing with a bore of the micrometer frame.

A very slight movement of the actuating-ring, "even the twenty-fifth part of a revolution, moves the roller forward toward the shallower part of the recess with a wedging action, which springs that part of the tongue inwardly and locks the spindle firmly."

This patent therefore seems to put emphasis upon the efficiency of special locking means which is substantially that of the patent in suit.

While the means for holding the ring against rotation is different, I am of the opinion that there is nothing in the file wrapper, nor in the general principles of law relating to the interpretation of claims, which prevents the complainant from claiming a reasonable range of equivalents in respect to the means of holding the ring against rotation. The invention lay in the general combination of coacting parts, rather than in the specific means for holding the ring against rotation. A mere transposition of a slot and a projection, or the provision of two projections and two recesses for these projections, is merely a variation in the way of performing the single function of holding the ring against rotation. This does not touch the co-operative action of the parts which lock the spindle. A construction of claim 1 which can be thus avoided is, in my opinion, too narrow.

The device of this patent, however, does not seem to embody the particular advantages in the assembling of the parts which is characteristic of complainant's device, although in other respects it is, in my opinion, an infringement.

The Starrett patents 873,626 and 928,889 present even a closer resemblance to the patent in suit than the Starrett patent 806,594. What has been said about the reversal or variation of means for holding the ring against rotation is specially applicable to these patents. These patents also show an appropriation of the special features of the patent in suit which give particular advantages in the assemblage of parts.

The differences in construction which the defendant points out may possess some special advantages, but this does not justify the defendant in appropriating the substance of the complainant's patent. An improver does not acquire title to the invention of another upon which he makes improvements.

The defendant comments upon the absence of evidence that the patented device has been used by the trade, and suggests that the court should infer from the absence of proof on this point a lack of commercial success, and that this should weigh against the complainant. Such an inference, however, would be entirely unwarranted in view of the

stipulation that "complainant's exhibit, complainant's micrometer" is a specimen of the micrometer calipers of commerce as manufactured and sold by the complainant herein under the patent in suit.

It appears that the defendant was duly notified of complainant's contention that there was infringement, in January, 1908, and pointed out, as the specific difference between the device of the patent in suit and of the Starrett patent, No. 873,626, "there is no seat in the slot in the wall of our combination, and no projection of the split-ring in our patent." This seems too narrow a test of the question of the substantial similarity of the devices.

I am of the opinion that the patent in suit is valid, and that the defendant infringes both claims 1 and 2. A draft decree for the complainant may be presented accordingly.